JS 44 (Rev. 04/21) FLSD Revised 12/02/2022

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

## I. (a) PLAINTIFFS

Guangxi-Nanning China-Europe Trading Co.

## DEFENDANTS

AMASIA MFR ALLIANCE CORP. et al.

**(b)** County of Residence of First Listed Plaintiff  Nanning, China
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant Duval County, FL
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

YK Law LLP, 404 S. Figueroa St., STE 2280, LA, CA 90071

Attorneys *(If Known)*

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ■ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ■ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical | | **INTELLECTUAL PROPERTY** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | **RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 460 Deportation |
| (Excl. Veterans) | | | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 485 Telephone Consumer Protection Act (TCPA) |
| ■ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee – Conditions of Confinement | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ■ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Re-filed *(See VI below)*
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation Transfer
- ☐ 7 Appeal to District Judge from Magistrate Judgment
- ☐ 8 Multidistrict Litigation – Direct File
- ☐ 9 Remanded from Appellate Court

## VI. RELATED/ RE-FILED CASE(S)

*(See instructions):* a) Re-filed Case ☐YES ■NO  b) Related Cases ☐YES ☐NO

JUDGE:   DOCKET NUMBER:

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:
Fla. Stat. § 501.201

LENGTH OF TRIAL via 14 days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ■ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 1/26/2023 | Brian D Park |

FOR OFFICE USE ONLY : RECEIPT #    AMOUNT    IFP    JUDGE    MAG JUDGE
D

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**      **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**      **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked. Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**      **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**      **Nature of Suit.** Nature of Suit. Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**      **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Refiled (3) Attach copy of Order for Dismissal of Previous case. Also complete VI.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

Remanded from Appellate Court. (8) Check this box if remanded from Appellate Court.

**VI.**      **Related/Refiled Cases.** This section of the JS 44 is used to reference related pending cases or re-filed cases. Insert the docket numbers and the corresponding judges name for such cases.

**VII.**      **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
  Brief Description: Unauthorized reception of cable service

**VIII.**      **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

**Case No.: [Case No.]**

GUANGXI NANNING CHINA-EUROPE
TRADING CO., LTD.

     Plaintiff(s),

v.

ZIGZAG INTERNATIONAL GROUP LLC, a
Florida Limited Liability Company, LEXIS
GROUP LLC, a Wyoming Limited Liability
Company, HUA JIE LIN, AMASIA
MANUFACTURERS ALLIANCE CORP and
JERRY LEE,                                         /
     Defendant(s).

_____

**COMPLAINT**

     GUANGXI NANNING CHINA-EUROPE TRADING CO., LTD. ("GUANGXI") sues

ZIGZAG INTERNATIONAL GROUP LLC ("ZIGZAG"), LEXIS GROUP LLC

("LEXIS"), HUA JIE LIN ("Ms. LIN"), AMASIA MANUFACTURERS ALLIANCE

CORP ("AMASIA") and JERRY LEE ("Mr. LEE") and allege as follows:

**GENERAL ALLEGATIONS**

     1.     GUANGXI is a corporate entity from the People's Republic of China.

     2.     ZIGZAG is a Florida limited liability company.

     3.     LEXIS is a Wyoming limited liability company.

     4.     Ms. LIN is a Florida resident, a member of ZIGZAG, and a member of LEXIS.

     5.     AMASIA is an entity with its principal place of business in Duval County,

Florida.

6.     Mr. LEE held himself out as the owner of AMASIA.

7.     AMASIA held Mr. LEE out as its owner.

8.     Ms. LIN held herself out as an authorized agent of AMASIA.

9.     Plaintiff alleges on information and belief, at all times material hereto, Mr. LEE and Ms. LIN were both owners of AMASIA.

10.     On information and belief, Mr. LEE is an individual doing business in Duval County, Florida, and/or is a current or former resident of Florida.

11.     This court has subject matter jurisdiction because this is an action for damages in excess of $30,000, exclusive of interest, costs, and attorneys' fees.

12.     Venue is proper in this court because one or more contracts at issue in this case sets exclusive jurisdiction in the courts located within Duval County and/or some or all causes of action arose in Duval County.

13.     All conditions precedent to this lawsuit have occurred or been waived.

14.     Plaintiffs have hired YK LAW LLP to represent it in this matter and have agreed to pay the firm a reasonable fee.

**VENUE AND JURISDICTION**

15.     Jurisdiction is proper pursuant to 28 U.S.C. §1332.  The matter in controversy exceeds $75,000, exclusive of interest and costs, and the controversy is between citizens of different states.

16.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §1391.  A substantial part of the events giving rise to the claim occurred in Duval County in the Middle District of Florida.

## THE INITIAL INDUCEMENT

17.     In or about November 2019, GUANGXI, through its Marketing Director, GAO

YEHENG ("Mr. GAO") and AMASIA, through its procurement contact, and owner of AMASIA,

Ms. Lin executed a procurement contract for the supply of cast aluminum decorative columns (See

Attached "Master Supply & Purchasing Agreement No. 1" dated November 12, 2019) and procurement

contract for the supply of cast copper valves (See "Master Supply & Purchasing Agreement No. 2 dated

December 18, 2019) (Herein referred to collectively as the "Agreement" No. 1 and No. 2 respectively;

Attached herein as "**Exhibit A**" & "**Exhibit B**").

18.     On or about December 18, 2019, GUANGXI and AMASIA, through its respective

authorized representatives, Mr. GAO, Karen Hickernell ("Ms. HICKERNELL") executed the

Agreement No. 1 and No. 2.

19.     According to the Agreement, AMASIA as the buyer, and GUANGXI agreed to

establish a warranty and customer service program ("Warranty Program")  to ensure the quality of

the products as specified in the Agreement No. 1 and 2.

20.     Pursuant to the Agreement No. 1, and the relevant portions relating to the Warranty

Program, GUANGXI remitted $165,000.00 to AMASIA, of which, it remitted 50% on November

21, 2019 and 50% on January 14, 2020.

21.     Pursuant to the Agreement No. 2 dated December 18, 2019, and the relevant

portions relating to the Warranty Program, GUANGXI remitted $750,000.00 to AMASIA on

December 24, 2019; January 20, 2020; September 8, 2020; September 22, 2020; October 30, 2020;

and December 5, 2020, which totaled $750,000.00.

22.     Pertaining only to the Warranty Program payment dated December 5, 2020, relating

to the Agreement No. 2, at the instructions of Ms. Lin, representing AMASIA, GUANGXI remitted the last portion of the $750,000.00, in the amount of $100,000.00 to Industrial Bank Card account number 622909216692461416; account which was set up under the name Zhoukai Yan (Mr. YAN). Due to Ms. Lin's representation and stated urgency by which the last portion of the Warranty Program payment needed to be made; Mr. GAO remitted said $100,000.00 from his personal account to the above referenced account provided by Ms. Lin.

23.     Plaintiff alleges on information and belief that Mr. YAN is related to Ms. LIN.


**ZIGZAG, LEXIS, AMASIA, HUA JIE LIN AND JERRY LEE PARTNERSHIP AND JOINT AND SEVERAL LIABILITY**

24.     The following is, for the most part, a recitation of the complaint filed by ZIGZAG INTERNATIONAL GROUP LLC in the Florida state circuit court[1].  Therefore, the following paragraphs are alleged on information and belief as follows:

25.     Ms. LIN and Mr. LEE are business partners and both owners of AMASIA, and are jointly and severally liable relating to AMASIA's business transactions; namely, breach of contract as to Agreement No. 1 and No. 2 (hereinafter referred to collectively as the "Agreement," unless otherwise distinguished with "No. 1" and "No. 2").

26.     On or about December 5, 2020, Ms. Lin and AMASIA represented to Mr. Gao, the marketing director of GUANGXI, that Ms. LIN has and has had a close relationship with Mr. LEE; she further represented that Mr. LEE has been part of hundreds of millions of dollars of business transactions relating to foreign manufacturers and is able to help with said transaction relating to the Agreement.  Relying on the statements made by Ms. Lin, as the

---

[1] Case No.  In the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida.

authorized representative of AMASIA, GUANGXI agreed to conduct business with Mr. LEE and AMASIA.

27.    Plaintiff was even informed by Ms. LIN that she even toured his expensive seaside home and what she refers to as his luxury cruise ship.

28.    Plaintiff is informed and believes and thereon alleges that Ms. LIN further represented that Mr. LEE had developed and sold the "Jaxport Cruise Terminal."

29.    Plaintiff is informed and believes and thereon alleges that Ms. LIN represented that Mr. LEE is a wealthy investor with many business connections from which GUANGXI can benefit.

**THE "AGREEMENT"**

30.    Plaintiff is informed and believes and thereon alleges that on or about September 13, 2021, Ms. LIN and Mr. Zhoukai Yan met at the office of AMASIA to review the Agreement with GUANGXI.

31.    Mr. LEE was not present. Rather, Sarah Verus ("Ms. VERUS") was present for AMASIA.

32.    During the review, Ms. LIN informed Ms. VERUS that various requirements of the Agreement were untenable, including but not limited to the shipping timeframes.

33.    During the review of the Agreement, Mr. LEE by phone represented to Ms. LIN that the form of the Agreement was standard in the industry.

34.    Mr. LEE represented to Ms. LIN that the strict language of the Agreement would be disregarded by AMASIA because of the close relationship between Ms. LIN and Mr. LEE.

35.    Mr. LEE repeatedly represented that if the streetlight project (referring to the "Agreement" with GUANGXI) was unsuccessful, the Warranty payment would be refunded to

GUANGXI, even swearing to God that he would do so.

36.   Mr. LEE urged ZIGZAG (Ms. LIN) to quickly sign the Agreement.

37.   Based on the representations by Mr. LEE, AMASIA, ZIGZAG entered into the Agreement, a copy of which is attached hereto as "**Exhibit A**": and "**Exhibit B**."

38.   The following portions of the Agreement are relevant:

39.   Pursuant to the Warranty provision of the Agreement, warranty payments are to be refunded in the event that products are fully qualified by an independent inspection company, **but AMASIA unreasonably fails to purchase** the agreed upon quantity. (*See* Agreement No. 1 and 2 as "**Exhibit A & B**".)

40.   Pursuant to the Warranty provision of the Agreement, warranty payments are also to be refunded if AMASIA breaches the Agreement.

41.   All of the payments were made by Plaintiff from 12/5/2020 to 11/21/2019, which amount to 8 separate transactions, totaling some $840,000.00, at its relevant time value of the exchange rate - RMB to US Dollar.

42.   Plaintiff is informed and believes and alleges that on or about September 17, 2021, ZIGZAG alleges that it paid, or caused to be paid, to AMASIA $200,000 of the above referenced funds; purportedly relating to its portion of the first $255,400 warranty payment pursuant to the agreement with Mr. LEE.

43.   The Agreement states in pertinent part:

**Force Majeure.** To the extent that either party to this Agreement shall be wholly or partially prevented from the performance of any obligation or duty placed on such party by reason of or through strikes, stoppage of labor, riot, fire, flood, acts of war, insurrection, accident, order of any court, act of God, or specific cause reasonably beyond the party's control and not attributable to its neglect or

nonfeasance, in such event, the time for the performance of such obligation or duty shall be suspended until such disability to perform is removed.

44.     The Agreement permits prevailing-party expenses and attorneys' fees.

## THE AMASIA SHIPMENT

45.     On September 24, 2021, ZIGZAG had the goods identified in Exhibit D of the Agreement (the "AMASIA Shipment") loaded by the shipping company for transit from Shanghai, China, to Savannah, GA, with an ETA from the shipping company of October 28, 2021.

46.     However, a typhoon hit Shanghai in or about September 2021, which resulted in the delay to the AMASIA Shipment.

47.     Both prior to and after loading, ZIGZAG informed AMASIA of the expected delay.

48.     During shipping, additional delays relating to weather and COVID impacted the transit times.

49.     Throughout the shipping process including after the AMASIA Shipment arrived in Savannah, GA, AMASIA raised no objection to the delay.

50.     Following arrival, on or about December 14, 2021, an independent inspection company inspected the AMASIA Shipment.

51.     Unbeknownst to ZIGZAG, the independent inspection company determined that the AMASIA Shipment was fully qualified.

52.     On or about December 20, 2021, Mr. LEE represented to Ms. LIN that the independent inspection company had determined that the AMASIA Shipment was nonconforming.

53.     Ms. LIN asked Mr. LEE for a copy of the inspection report.

54.     However, Mr. LEE never provided a copy of the report.

55.     Mr. LEE further represented that the warranty payment would be refunded if AMASIA did not accept the AMASIA Shipment due to nonconformity.

56.     Mr. LEE requested that they have the AMASIA Shipment reinspected, purportedly with the hopes that the independent inspection company would reevaluate the goods and find them conforming, or at least less nonconforming, which, according to him, would help appease his buyer who would otherwise be upset with such allegedly nonconforming goods.

57.     On information and belief, for the second inspection on or about December 22, 2021, Mr. LEE attempted to influence the independent inspector to report that the AMASIA Shipment, which in reality had already been determined to be conforming, was nonconforming.

58.     Employees and/or agents of AMASIA and/or Mr. LEE pointed out alleged defects to the inspector and request the inspector record the alleged defects.  On information and belief, the employees and/or agents did so at the request of Mr. LEE.

59.     Nevertheless, as then unbeknownst to Ms. LIN, the independent inspection company again fully qualified the AMASIA Shipment.

60.     Due to the alleged inspection failure, Mr. LEE represented to Ms. LIN that he could still sell the items, but to the 'Tennessee Power Department,' because, he represented, they had a lower quality standard.  However, he alleged that wheels would need to be greased, and demanded additional funds from Ms. LIN.  Eventually, on or about December 23, 2021, Ms. LIN, through ZIGZAG, provided Mr. LEE with an additional $28,000.  Nothing came of the purported wheel-greasing.

61.     Through January 4, 2022, Mr. LEE continued to represent to ZIGZAG that the warranty payment would be refunded if AMASIA did not accept the Shipment due to nonconformity.

62.     Mr. LEE represented to Ms. LIN that Ms. Verus would handle refund of the warranty payment.

63.     However, to date, AMASIA has failed to pay for the AMASIA Shipment and failed to refund the warranty payment.

## COUNT 1

### (Breach of Contract - Plaintiff against AMASIA)

64.     GUANGXI realleges and reincorporates paragraphs 1 through and 61 above as if fully set forth herein.

65.     AMASIA materially breach the Agreement by:

   a.   Failing to pay for goods; and/or

   b.   Failing to refund warranty payments; and/or

   c.   Failing to establish a warranty and customer service program.

66.     GUANGXI was damaged as a result of AMASIA's breach.

**WHEREFORE,** GUANGXI requests this honorable court enter judgment against AMASIA for:

A.  General damages;

B.  Prejudgment interest;

C.  Attorney's fees;

D.  Costs; and

E.  Any further relief the court finds appropriate.

## COUNT 2

(Breach of Implied Covenant of Good Faith and Fair Dealing - GUANGXI against
AMASIA)

67.    GUANGXI realleges and reincorporates all previous paragraphs as if fully set
forth herein.

68.    AMASIA's conduct under the Agreement was not consistent with GUANGXI's
reasonable expectations.

69.    AMASIA's retention of GUANGXI's warranty payment was inconsistent and
in breach of the Agreement and beyond GUANGXI's reasonable expectations.

70.    AMASIA's refusal to accept the determination of conformity by the independent
inspection company constitutes a breach of the implied good faith and fair dealing.

71.    AMASIA's attempt to influence the independent inspection company's
determination was inconsistent with GUANGXI's reasonable expectations.

72.    AMASIA's failure to refund the warranty payment because it would not make a
profit violates the implied covenant of good faith and fair dealing of the Agreement.

73.    AMASIA's retention of GUANGXI's entire warranty payment after the first
shipment was inconsistent with GUANGXI's reasonable expectations.

74.    GUANGXI was damaged as a result of AMASIA's conduct.

75.    GUANGXI is entitled to recover reasonable attorney's fees pursuant to
the Agreement.

**WHEREFORE,** GUANGXI requests this honorable court enter judgment against
AMASIA for:

A.  General damages;

B.  Prejudgment interest;

C.  Attorney's fees;

D.  Costs; and

E.  Any further relief the court finds appropriate.

## COUNT 3
### (Rescission - GUANGXI against AMASIA)

76.     GUANGXI realleges and reincorporates all previous paragraphs above as if fully

set forth herein.

77.     GUANGXI entered into the Agreement as a result of mutual mistake,

unilateral mistake, or misrepresentation by AMASIA.

78.     GUANGXI has demanded and hereby demands rescission of the Agreement.

79.     GUANGXI has no adequate remedy at law.

**WHEREFORE,** GUANGXI requests this honorable court enter judgment against

AMASIA for:

A.  An equitable remedy of constructive trust, disgorgement, equitable lien, rescission, and/or

restitution;

B.  Prejudgment interest;

C.  Costs; and

D.  Any further relief the court finds appropriate.

## COUNT 4

### (Negligent Misrepresentation - GUANGXI against AMASIA, MS. LIN & MR. LEE)

80.     GUANGXI realleges and reincorporates all previous paragraphs above as if fully

set forth herein.

81.     AMASIA is vicariously liable for the representations made by Mr. LEE and Ms. LIN as

AMASIA's authorized agents.

82.   One or more of AMASIA's representations concerning a material fact that GUANGXI believed to be true was in fact false.

83.   AMASIA was negligent in making the representation(s) because it should have known the representations was false.

84.   In making the representation(s), AMASIA intended or expected that another would rely on the representations.

85.   GUANGXI relied on AMASIA's false representations.

86.   The false representation(s) was material to the subject Agreement and a legal cause of damage to GUANGXI. **WHEREFORE,** GUANGXI requests this honorable court enter judgment against AMASIA, Ms. LIN, and Mr. LEE for:

A.  General damages;

B.  Special damages for its transactional expenses;

C.  Prejudgment interest;

D.  Costs; and

E.  Any further relief the court finds appropriate.

## COUNT 5

(Fraudulent Misrepresentation - GUANGXI against AMASIA, Mr. LEE, and Ms. LIN)

87.   GUANGXI realleges and reincorporates all previous paragraphs above as if fully set forth herein.

88.   AMASIA is vicariously liable for the representations made by Mr. LEE and Ms. LIN.

89.   AMASIA intentionally made one or more false representations concerning a material fact relating to the Agreement.

90.   AMASIA knew one or more of the representations was false when it made it or

made the representations knowing it did not know whether it was true or false.

91. In making the representation(s), AMASIA intended that another would rely on the false representation(s).

92. GUANGXI relied on the false representations.

93. The false representations related to material facts to the Agreement.

94. One or more of the false representations was a legal cause of damage to GUANGXI. **WHEREFORE,** GUANGXI requests this honorable court enter judgment against AMASIA for:

A. General damages;

B. Special damages for its transactional expenses;

C. Prejudgment interest;

D. Costs; and

E. Any further relief the court finds appropriate.

## COUNT 6

### (FDUTPA - GUANGXI against AMASIA)

95. GUANGXI realleges and reincorporates all previous paragraphs above as if fully set forth herein.

96. AMASIA is vicariously liable for the representations by Mr. LEE.

97. AMASIA violated the Florida Deceptive and Unfair Trade Practices Act by:

    a. making one or more of the negligent and/or fraudulent misrepresentations identified herein; and/or

    b. unfairly and/or deceptively claiming goods were nonconforming without reliable proof thereof.

98.     AMASIA's conduct in importing goods was in the course of trade or commerce as defined in the Florida Deceptive and Unfair Trade Practices Act.

99.     GUANGXI suffered actual injury due to AMASIA's violation of in the Florida Deceptive and Unfair Trade Practices Act because AMASIA:

    a.   induced GUANGXI to enter into a business relationship that it would not have entered into had it know the true state of affairs;

    b.   failed to pay for GUANGXI goods;

    c.   failed to establish a warranty and customer service center for GUANGXI goods;

    d.   took GUANGXI's warranty payment without using the funds towards warranties; and/or

    e.   failed to refund the warranty payment to GUANGXI.

100.    AMASIA's violation of in the Florida Deceptive and Unfair Trade Practices Act injuries consumers by:

    a.   depriving them of a warranty and/or customer service center for the goods that sellers such as GUANGXI imported and intended to import;

    b.   reducing the availability of the goods that sellers such as GUANGXI had planned to import into Florida;

    c.   reducing the interest by sellers such as GUANGXI to import into Florida; and/or

    d.   unjustly enriched itself at the expense of GUANGXI.

101.    GUANGXI is entitled to recover reasonable attorney's fees in this action because the Florida Deceptive and Unfair Trade Practices Act provides for recovery of attorney's fees upon entry of a favorable final judgment.

**WHEREFORE,** GUANGXI requests this honorable court enter

judgment against AMASIAfor:

A.  General damages;

B.  Special damages for its transactional expenses;

C.  Prejudgment interest;

D.  Attorney's fees;

E.  Costs; and

F.  Any further relief the court finds appropriate.

## COUNT 7

(Negligent Misrepresentation - GUANGXI against Mr. LEE and Ms. LIN)

102.    GUANGXI realleges and reincorporates all previous paragraphs

above as if fully set forth herein.

103.    One or more of Mr. LEE's representations concerning a

material fact that it believed to be true was in fact false.

104.    One or more of Mr. LEE's representations concerning a

material fact that it believed to be true was in fact false.

105.    Mr. LEE was negligent in making the representation(s)

because he should have known the representations was false.

106.    In making the representation(s), Mr. LEE intended or expected

that another would rely on the representations.

107.    GUANGXI justifiably relied on Mr. LEE's false representations.

108.    The false representation(s) was a legal cause of damage to

ZIGZAG. **WHEREFORE,** GUANGXI requests this honorable court

enter judgment against Mr. LEE for:

A.  General damages;

B.  Special damages for its transactional expenses;

C.  Prejudgment interest;

D.  Costs; and

E.  Any further relief the court finds appropriate.

## COUNT 8

(Fraudulent Misrepresentation –GUANGXI against Mr. LEE & Ms. LIN

109.  GUANGXI realleges and reincorporates paragraphs 1 through and including 16 and 31 through and including 85 above as if fully set forth herein.

110.  Mr. LEE intentionally made one or more of the false representations concerning a material fact.

111.  Mr. LEE knew one or more of the representations was false when it made it or made the representations knowing it did not know whether it was true or false.

112.  In making the representation(s), Mr. LEE intended that another would rely on the false representation(s).

113.  GUANGXI relied on the false representations.

114.  One or more of the false representations was a legal cause of damage to GUANGXI.

**WHEREFORE,** GUANGXI requests this honorable court enter judgment against Mr. LEE for:

A.  General damages;

B.  Special damages for its transactional expenses;

C.  Prejudgment interest;

D.  Costs; and

E.  Any further relief the court finds appropriate.

## COUNT 9

### (FDUTPA- GUANGXI  against  Mr.  LEE)

115.    GUANGXI realleges and reincorporates paragraphs 1 through and including 16 and 31 through and including 85 above as if fully set forth herein.

116.    Mr. LEE violated the Florida Deceptive and Unfair Trade Practices Act by:

    a.  making one or more of the negligent and/or fraudulent misrepresentations identified herein; and/or

    b.  unfairly and/or deceptively claiming goods were nonconforming without reliable proof thereof.

117.    Mr. LEE's conduct in importing goods and/or promoting business opportunities was in the course of trade or commerce as defined in the Florida Deceptive and Unfair Trade Practices Act.

118.    GUANGXI suffered actual injury due to Mr. LEE's violation of in the Florida Deceptive and Unfair Trade Practices Act because Mr. LEE:

    a.  induced GUANGXI to enter into a business relationship that it would not have entered into had it know the true state of affairs;

    b.  had AMASIA fail to pay for GUANGXI goods;

    c.  had AMASIA fail to establish a warranty and customer service center for GUANGXI goods;

    d.  had AMASIA take GUANGXI's warranty payment without using the funds towards warranties; and/or

     e.  had AMASIA fail to refund the warranty payment to GUANGXI.

119.   Mr. LEE's violation of in the Florida Deceptive and Unfair Trade Practices Act injuries consumers by:

    a.  depriving them of a warranty and/or customer service center for the goods that sellers such as GUANGXI imported and intended to import;

    b.  reducing the availability of the goods that sellers such as GUANGXI had planned to import into Florida;

    c.  reducing the interest by sellers such as GUANGXI to import into Florida; and/or

    d.  unjustly enriched himself as the expenses of GUANGXI.

120.   GUANGXI is entitled to recover reasonable attorney's fees in this action because the Florida Deceptive and Unfair Trade Practices Act provides for recovery of attorney's fees upon entry of a favorable final judgment.

**WHEREFORE,** GUANGXI requests this honorable court enter judgment against Mr. LEE for:

A.  General damages;

B.  Special damages for its transactional expenses;

C.  Prejudgment interest;

D.  Attorney's fees;

E.  Costs; and

F.  Any further relief the court finds appropriate.

## COUNT 10

### Pleading in the Alternative

To the extent that any count or remedy above is determined to preclude one or more other counts or remedies above, those counts and/or remedies are pled in the alternative.


Respectfully,

**YK LAW GROUP LLP**

/s/ Brian  Park

California   Bar
No. 248994
404 S. Figueroa Street.
Suite 2280
Los Angeles, CA 90071
**+1** (213) 401-0970
Fax: **+1** (407) 890-5819
bpark@yklaw.
us
Counsel       for
Plaintiff(s)

Exhibit "A"



**PURCHASING AGREEMENT**

This PURCHASING AGREEMENT (this "Agreement") is made and entered into as of the 13th day of September , 2021 ("Effective Date") by and between AMASIA MANUFACTURERS ALLIANCE CORP., a Florida corporation ("Buyer") whose principal place of business is 7645 Gate Parkway Suite 106, Jacksonville, FL 32256 and Zigzag International Group LLC, a florida limited liability company whose principal place of business is located at 6926Holly Heath Drive, Riverview, FL 33578 ("Supplier").

**Supply and Purchase of Products.** The Supplier shall supply and the Buyer shall purchase the items specified in Exhibit A (the "Products") in accordance with the terms of this agreement.

**Orders.**

**Purchase Orders.** Buyer shall submit all orders for Products to Supplier in writing to Supplier's address listed in the introduction to this Agreement, or as Supplier otherwise specifies in writing, (each a "Purchase Order") and include in each Purchase Order:

    a.   each Product it is ordering, identified by model or part number
    b.   the amount of each product it is ordering
    c.   the unit price of each Product it is ordering
    d.   the location for the delivery, and
    e.   the delivery date, allowing reasonable time for Supplier to receive, review, process the Purchase Order, and ship the Products (the "Delivery Date").

**Failure to Deliver.** Both parties agree that time is of the essence and failure to deliver the Products in a timely manner according to the agreed upon Delivery Date shall constitute a breach of this Agreement.

**Canceling Purchase Orders.** Buyer may, at no expense to itself, cancel part or all of a Purchase Order up to fifty (50) calendar days before the Delivery Date, due to quality issues with Suppliers, delivery issues with Suppliers, or other factors beyond the control of the Buyer.

**Accepting, Modifying, and Rejecting Purchase Order Changes.**

**By Notice.** Within seven Business Days of receiving a Purchase Order Change from Buyer, Supplier shall accept, reject, or propose a modification to the Purchase Order by sending Buyer written notice of its acceptance, rejection or proposed modification.

**Deemed Acceptance.** If Supplier fails to notify Buyer of its acceptance, rejection, or proposed modification within seven Business Days of receiving a Purchase Order, Buyer may deem that Supplier accepted the Purchase Order.

**Modification of Purchase Order.** Supplier may propose a modification to a Purchase Order by including in its notice to Buyer a modified Purchase Order for Buyer to accept or reject according to the acceptance and rejection procedures under paragraphs By Notice and Deemed Acceptance.

Page | 1                                                                                      Initial _____



**Inspection and Notice.** Buyer will have 14 calendar days from the Delivery Date (or which date Products are physically delivered to Buyer's warehouse) to inspect and evaluate the Products before notifying that Buyer is either accepting or rejecting the Products.

**Acceptance Criteria.** The "Acceptance Criteria" are the specifications the Products must meet for Supplier to comply with its requirements and obligations under this Agreement, detailed in Exhibit A, attached hereto and made a part hereof.

**Quantity, Price and Payment Terms.**

Product order quantity, prices and payment terms are set for in Exhibit B.

**Mutual Representations.**
**Authority and Capacity.** The parties have the authority and capacity to enter into this Agreement.
**Execution and Delivery.** The parties have executed and delivered this Agreement.
**Enforceability.** This agreement constitutes a legal, valid, and binding obligation, enforceable against the parties according to its terms.
**No Conflicts.** Neither party is under any restriction or obligation that may affect the performance of its obligations under this Agreement.

**Warranty.** Supplier warrants that the Products will be free from material defects, are made with workmanlike quality, and will conform to the applicable specifications. Purchase of product after sales warranty is required for all Purchase Orders. This Warranty shall cover after sales services to the customer, including customer service phone support, product repairs and warranty services for the Product during Warranty Period.

**Replacement Products.** Upon receiving written notice from Buyer of such defect or nonconformity of less than 10% of units within 90 days after deliver of the Products, Supplier will be required to provide Buyer with a replacement Product at Supplier's expense unless the defect is due to Buyer abuses, neglects, or misuses according to the applicable documentation or specifications. (See Exhibit B)

**Additional Warranty Terms.**

a. An additional 2% of product must be included in each production shipment.
b. Warranty payments are non-refundable, except in the event that products are fully qualified by an independent inspection company, but Buyer breaches this Agreement by failing to purchase the agreed upon quantity of units without reason. In such case of breach by the Buyer, warranty payment shall be refunded.
c. See Warranty Addendum (Exhibit C) for more details.
d. This Agreement shall be null and void if Product Warranty is not purchased and in place as of the date specified in Exhibit C.

Page | 2                                                                     Initial _____



Recovery.

Supplier Responsibilities.  Supplier is responsible for providing products meeting all obligations, qualifications, specifications and requirements per Exhibit A, and product delivery schedule per Exhibit D.

Buyer Responsibilities.  Buyer is responsible for product payment per Exhibit B when Supplier has met its responsibilities.

Supplier Recovery. Supplier may, in addition to any other remedy it may have, recover from Buyer all damages caused by Buyer's failure to meet Buyer Responsibilities, including reasonable attorney fees.

Buyer Recovery. Buyer may, in addition to any other remedy it may have, recover from Supplier all damages caused by Supplier's failure to meet Supplier Responsibilities, including reasonable attorney fees.

Confidentiality.

Confidentiality Obligation. The receiving party shall hold in confidence all Confidential Information disclosed by the disclosing party to the receiving party.

Use Solely for Purpose. A receiving party may only use the Confidential Information according to the terms of this Agreement and sole for the purpose for which it was intended.

Non-Disclosure. Neither Party may disclose Confidential Information; such as the existence of this Agreement, the Transaction, or the Purpose; to any third party, except to the extent permitted by this Agreement, both Parties agree in writing, or required by law.

Notice. Either Party shall disclose to the other if it is required by Law to disclose any Confidential Information or learns of any unauthorized disclosure of Confidential Information.

Effect of Termination.

Termination of Obligations. Subject to paragraph Payment Terms, on termination or expiration of this agreement, each party's rights and obligations under this agreement will cease immediately.

Payment Obligations. Even after termination or expiration of this agreement, each party shall pay any amounts it owes to the other party, including payment obligations for services already rendered, work already performed, goods already delivered, or expenses already incurred, and shall refund any payments received but not yet earned, including payments for services not rendered, work not performed, or goods not delivered, expenses forwarded, with the exception of warranty payments which are non-refundable.

No Further Liability. On termination or expiration of this agreement, neither party will be liable to the other party, except for liability that arose before the termination or expiration of this Agreement, or arising after the termination or expiration of this Agreement and in connection with sections Confidentiality or Termination.

Page | 3                                                        Initial



**Manufacturers Alliance Corporation**

**Limitation on Liability.** Neither party will be liable for breach-of-contract damages that are remote or speculative, or that the breaching party could not reasonably have foreseen on entry into this agreement.

**General Provisions.**

**Entire Agreement.** The parties intend that this Agreement, together with all attachments, schedules, exhibits, and other documents that both are referenced in this Agreement and refer to this Agreement, represent the final expression of the parties' intent relating to the subject matter of this Agreement, contain all the terms the parties agreed to relating to the subject matter, and replace all of the parties' previous discussions, understandings, and Agreements relating to the subject matter of this Agreement.

**Provide Assurances On Notice.** Each party, on receipt of notice from the other party, shall sign or cause to be signed all further documents, do or cause to be done all further acts, and provide all assurances as may reasonably be necessary or desirable to give effect to the terms of this Agreement.

**Amendment.** This Agreement can be amended only by a written Agreement signed by both parties.

**Assignment.** Neither party may assign this Agreement or any of their rights or obligations under this Agreement without the other party's written consent.

**Relationship of the Parties.**

**No Relationship.** Nothing in this Agreement creates any special relationship between the parties, such as a partnership, joint venture, or employee/employer relationship between the parties.

**No Authority.** Neither party will have the authority to, and will not, act as agent for or on behalf of the other party or represent or bind the other party in any manner.

**No Third-Party Beneficiaries.** Unless explicitly stated otherwise elsewhere in this Agreement, no Person other than the parties themselves has any rights or remedies under this Agreement.

**Notices.**

**Method of Notice.** The parties shall give all notices and communications between the parties in writing by (i) personal delivery, (ii) a nationally-recognized, next-day courier service, (iii) first-class registered or certified mail, postage prepaid [, (iv) fax][, or (v) electronic mail] to the party's address specified in this Agreement, or to the address that a party has notified to be that party's address for the purposes of this section.

**Receipt of Notice.** A notice given under this Agreement will be effective upon the other party's receipt of it, or if mailed, the earlier of the other party's receipt of it and the [fifth] business day after mailing it.

Page | 4                                                        Initial



**Remedies Cumulative.** Except as expressly provided elsewhere in this Agreement, each party's rights and remedies under this Agreement are cumulative and in addition to, not exclusive of or in substitution for, any rights or remedies otherwise available to that party.

**Survival.** The parties' obligations under sections **Confidentiality Obligations, Non-Disclosure Obligations,** and **Effect of Termination** will survive the **Termination, Expiration,** or **Closing Date** of this Agreement.

**Severability.** If any part of this Agreement is declared unenforceable or invalid, the remainder will continue to be valid and enforceable.

Waiver

**Affirmative Waivers.** Neither party's failure nor neglect to enforce any rights under this Agreement will be deemed to be a waiver of that party's rights.

**Written Waivers.** A waiver or extension is only effective if it is in writing and signed by the party granting it.

**No General Waivers.** A party's failure or neglect to enforce any of its rights under this Agreement will not be deemed to be a waiver of that or any other of its rights.

**No Course of Dealing.** No single or partial exercise of any right or remedy will preclude any other or further exercise of any right or remedy.

Governing Law and Consent to Jurisdiction and Venue

**Governing Law.** This Agreement, and any dispute arising out of the subject matter of the Agreement, shall be governed by the laws of the State of Florida.

**Consent to Jurisdiction.** Each party hereby irrevocably consents to the exclusive jurisdiction and venue of any state or federal court located within Duval County, State of Florida, in connection with any matter arising out of this Agreement or the transactions contemplated under this Agreement.

**Consent to Service.** Each party hereby irrevocably agrees that process may be served on it in any manner authorized by the Laws of the State of Florida.

**Waiver of Jury Trial.** Each party hereby irrevocably waives its rights to trial by jury in any Action or proceeding arising out of this agreement or the transactions relating to its subject matter.

**Attorney Fees.** If either party brings an Action to enforce their rights under this agreement, the prevailing party may recover its expenses (including reasonable attorneys' fees) incurred in connection with the Action and any appeal from the losing party.

**Force Majeure.** To the extent that either party to this Agreement shall be wholly or partially prevented from the performance of any obligation or duty placed on such party by reason of or through strikes,



stoppage of labor, riot, fire, flood, acts of war, insurrection, accident, order of any court, act of God, or specific cause reasonably beyond the party's control and not attributable to its neglect or nonfeasance, in such event, the time for the performance of such obligation or duty shall be suspended until such disability to perform is removed.

**Headings.** The section headings contained in this agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**Publicity Consent.** Neither party will use the other party's name, logo, or trademarks, or issue any press release or public announcement regarding this agreement, without the other party's written consent, unless specifically permitted under this Agreement or required by Law. The parties shall cooperate to draft all appropriate press releases and other public announcements relating to the subject matter of this agreement and the relationship between the parties.

**Counterparts.** This Agreement may be signed in any number of counterparts. Each counterpart is an original, and together, all counterparts form one single document.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first above written.

SUPPLIER

BUYER

Zigzag International Group LLC
Company Name

Amasia Manufacturers Alliance Corp
Company Name

Authorized Signature

Authorized Signature

Co-Founder
Title

CEO
Title

Initial



### EXHIBIT A
### SUPPLIER OBLIGATIONS, QUALIFICATIONS, PRODUCT SPECIFICATIONS AND REQUIREMENTS

**Products.**
- The Product Is a streetlight pole.

**Obligations.**
- Product must be manufactured completely meeting the product specs provided by Buyer. Specs will be agreed upon and accepted by both parties.

**Requirements.**
- Material: Aluminum 6063
- Height: 22 feet
- Detailed Specification attached as **Attachment 1**

**Qualification.**
- Supplier shall supply 1 container load of sample qualification product to be reviewed and inspected per specs. Feedback on any changes/modifications will be communicated with the supplier.
- Feedback from customer on any changes/modifications will be communicated with the supplier.
- Buyer intends to work with Supplier to get the product qualified and accepted by the customer.
- Products will be qualified through an independent inspection company which will provide a certificate of quality.
- If products do not meet qualifications, Supplier shall be responsible for payment of the inspection. If products meet qualifications, Buyer shall be responsible for payment of the inspection.

Initial



**EXHIBIT B**

**PRODUCT QUANTITY, PRICES AND PAYMENT TERMS**

**Product Quantity.** Buyer intends to purchase from Supplier 2,000 units.

**Product Price.** The unit price for the streetlight pole is one thousand two hundred seventy seven dollars ($1277). All prices are CIP to the Buyer's designated shipping point in the United States of America.

**Payment Terms.**

- Buyer agrees to have container released from the port before the last free day. Additional fees such as demurrage and transportation incurred due to delayed release from the port are the responsibility of the Buyer.
- Supplier Warranty payment must be made to Buyer by Sept 13, 2021 or this entire agreement will be null and void.
- Supplier to provide 1 sample container consisting of 128 units for Qualification.
- Buyer will inspect the units for quality per the specifications provided.  If the units meet the qualifications, Buyer will pay for the sample container in full (100%) within two weeks of receipt.
- **Remaining Units.** 30% prepayment will be paid to Supplier fifteen (15) days before each shipping deadline according to the Product Ordering Schedule (Exhibit D).  Remaining payment (70%) will be made within 7 calendar days of receiving each Bill of Lading from Supplier.
- If received delivery has less than 10% rejects, the rejected quantity needs to be filled on the next shipment. Rejected product may be returned to the Supplier at Supplier's expense.
- If received delivery has more than 10% rejects, the whole delivery shipment may be rejected and returned to Supplier at Supplier's expense.

Initial


**Manufacturers Alliance Corporation**

## EXHIBIT C

### WARRANTY ADDENDUM

**Warranty.** Supplier and Buyer shall establish a warranty and customer service program to back the quality of the products and give ongoing post-sales service to the customer. Said program will consist of the following:

a.      Buyer shall set up a Customer Service Center, hire and pay all necessary employees, create web page, toll-free number(s), and provide warehouse space and pay all shipping and administrative costs of the warranty program;

b.      Payment of ten percent (10%) of the Supplier CIP Price by the Supplier to the Buyer at the time of each order confirmation and acceptance for the purpose of administering the warranty program;

> 1.  Supplier shall pay an initial Two Hundred Fifty Five Thousand Four Hundred Dollars representing 10% of the purchase order of $2,554,000 USD in advance to fund the warranty accruals, which payment shall become due and payable immediately. Failure to pay this warranty payment by September 13, 2021 shall result in the cancellation and termination of this Agreement.

c.      These payments for the Warranty shall be non-refundable, except in the event that products are fully qualified by the Buyer, but Buyer breaches this Agreement by failing to purchase the agreed upon quantity of units without reason. In such case of breach by the Buyer, warranty payment shall be refunded.

d.      Supplier and Buyer shall abide by the proposed Warranty and Customer Service Coverage Programs for the Products as described below in paragraph **Warranty Coverage.**

**Warranty Coverage.**

**Warranty Period.** Supplier warrants its Products to be free of defects in material or workmanship for Five (5) years after sale to the original customer who purchases them for industrial, commercial, business and residential use.

**Warranty Coverage.** Buyer, at its option and in order to provide the best outcome for the customer, may elect to repair, replace, or reimburse a customer for any product covered by this warranty.

**Not Covered.** Wear and tear, damage or defects caused by misuse, abuse, negligence, alteration, or improper installation, storage, or handling.



**EXHIBIT D**

**PRODUCT ORDERING SCHEDULE**

**Delivery Date.** Date in PO schedule refers to the date the product is delivered to Buyer's designated shipping point in USA.

Initial sample product order of 128 units will be delivered to Buyer's designated shipping point in USA by Nov 1, 2021.

Detailed delivery schedule below.  Each deadline shall include a 5-day grace period.

Schedule:
1.      128 pc qualification lot
           a.   Ship Sept 24, 2021 by ocean freight
           b.   Receive by Nov 1, 2021

2.      Second shipment (256 units)
           a.   Ship by Feb 1, 2022 by ocean freight
           b.   Receive by March 15, 2022

3.      Third shipment (512 units)
           a.   Ship by April 1, 2022 by ocean freight
           b.   Receive by May 15, 2022

4.      Fourth shipment (640 units)
           a.   Ship by June 1, 2022 by ocean freight
           b.   Receive by July 15, 2022

5.      Fifth shipment (464 units)
           a.   Ship by August 1, 2022
           b.   Receive by September 15, 2022

**Delivery Deadline and Penalties.** Both parties agree that time is of the essence and delivery deadlines are of extreme importance.  If Supplier fails to deliver products according to the agreed upon deadlines, Buyer reserves the right to either refuse the entire shipment or charge Supplier for losses incurred due to delayed delivery.

Initial



## Attachment 1



22ft aluminum Light Pole.

| Remark | | Signare | Date | | | |
|---|---|---|---|---|---|---|
| Designed | | Approved by | | Drawing No. | Weight | Unit |
| Drawer | | Approved by | | YLQG20210806-07 | mm | |
| Proofread | | Standard | | | | |
| Technics | | Date | 2021-08-06 | Total 1 Page | 1 Page | |

Page | 11

Initial



## Addendum

This Addendum ("Addendum") to the Agreement made and entered into as of the 13th day of September , 2021 ("Effective Date") by and between AMASIA MANUFACTURERS ALLIANCE CORP., a Florida corporation ("Buyer") whose principal place of business is 7645 Gate Parkway Suite 106, Jacksonville, FL 32256 and Zigzag International Group LLC, a florida limited liability company whose principal place of business is located at 6926Holly Heath Drive, Riverview, FL 33578 ("Supplier"), shall be in effect as of September 13, 2021.

**Additional Payment Terms.** Buyer agrees to accept twenty thousand ($20,000) dollars on September 13, 2021 as partial payment of the warranty payment (as described in Exhibit via wire transfer.

Remaining balance of one hundred eighty thousand ($180,000) payable in full by September 15, 2021 via wire transfer or cashier's check.

All other payment terms as described in Exhibit B shall remain in full force and effect.

SUPPLIER

Zigzag International Group LLC
Company Name

Authorized Signature

Co-Founder
Title

BUYER

Amasia Manufacturers Alliance Corp
Company Name

Authorized Signature

CEO
Title